UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

VAUGHN S. WATROUS

v.                                                                                  C.A. No. 09-605 S

WARDEN T. SALISBURY, JR. ET AL.

REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Presently before the Court is a motion filed by plaintiff Vaughn S. Watrous, *pro se*, for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(2) (Docket # 2). Plaintiff is a former detainee at the Donald F. Wyatt Detention Center Facility ("Wyatt") in Central Falls, Rhode Island who was transferred to the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island. Plaintiff filed a complaint (the "Complaint" or "Cmpt.") pursuant to 42 U.S.C. § 1983 ("§ 1983") against three Wyatt administrators and four ACI administrators ("Defendants") (Docket # 1). Plaintiff alleges Defendants violated his constitutional rights by confining him in, or causing him to be confined in, disciplinary segregation after his transfer from Wyatt to the ACI.

This matter has been referred to me for determination; however, upon screening the Complaint, as required by 28 U.S.C. § 1915(e)(2) ("§ 1915(e)(2)") and 28 U.S.C. § 1915A ("§ 1915A"), I have found that the Complaint fails to state any federal claim upon which relief may be granted. Therefore, I address this matter by way of this Report and Recommendation. For the reasons stated below, I recommend that the Complaint be DISMISSED and Plaintiff's motion for leave to proceed *in forma pauperis* be DENIED.

BACKGROUND

Except as otherwise noted, the following background is based on allegations in the Complaint and the exhibits attached thereto, which are taken as true for purposes of this screening.

On August 11, 2009, Defendants Wyatt Warden Salisbury and Assistant Warden Tapley had Plaintiff transferred to the ACI from Wyatt, where, according to the documents in his federal criminal case, Plaintiff was incarcerated for violating the conditions of his supervised release. *See USA v. Watrous*, CR No. 03-72 (D.R.I Oct. 1, 2009) ("Criminal Case")(Docket # 38,

1

Judgment on Revocation of Supervised Release). Although Plaintiff was not subject to any disciplinary sanctions or charges at the time of the transfer, upon his arrival at the ACI Intake Service Center (the "ISC"), Defendant ISC Warden McCauley ordered that Plaintiff be placed in disciplinary segregation. Plaintiff's placement in segregation was based on information the ACI officials received from Defendants Salisbury and Tapley, who, in turn, relied on a report from Defendant Wyatt disciplinary supervisory Gauvin. The information indicated that Plaintiff had been sanctioned to 120 days of segregation as a result of an infraction at Wyatt. However, the sanction was imposed without any institutional disciplinary protections or proceedings, either at Wyatt or at the ACI, and Plaintiff was never given the opportunity to defend himself or appeal the charges and guilty finding.[1]

Plaintiff informed Defendants ISC Deputy Wardens Vitale and Langley, in person and in writing, that he had not received due process with respect to the sanctions imposed on him. Plaintiff also sent correspondences to other Defendants, including request and grievance forms sent to Defendant ISC Warden McCauley, Defendant Captain Barney, and Lieutenant Normandin, complaining that he was being sanctioned despite not having broken any prison rules or being afforded a disciplinary hearing or other procedural protections regarding the sanction. Additionally, (i) investigators sent by Defendant Vitale within three weeks of Plaintiff's transfer to the ACI were unable to confirm Plaintiff's alleged infraction and discipline proceedings at Wyatt and (ii) requests for relief made on Plaintiff's behalf by phone calls from the U.S. Marshal Service and Plaintiff's attorney were unanswered.

Plaintiff remained in segregation for 71 days, from August 11, 2009 until October 20, 2009. However, although the Wyatt sanction had been for 120 days, in response to a grievance request Plaintiff submitted, the segregation lieutenant finally took the initiative to release Plaintiff from segregation after 71 days based on Wyatt's failure to produce discipline board hearing results.

Plaintiff complains that while he was in disciplinary segregation he was denied all privileges, including (i) showers for the first eight days; (ii) outside recreation for the first eight days and only one hour per week thereafter; (iii) phone privileges; (iv) access to postage, paper,

---

[1] Although the Complaint does not detail the Wyatt disciplinary charges against Plaintiff or the alleged actions Wyatt officials took in finding Plaintiff guilty of the infraction, both the charges and the Wyatt officials' actions are described in the complaint in a separate action Plaintiff filed in this Court. *See Watrous v. Salisbury*, C.A. No. 09-599, 2010 WL 2035364, at *1-2 (D.R.I. Apr. 27, 2010)(Report and Recommendation summarizing Plaintiff's allegations regarding the Wyatt disciplinary charges against him and the procedures Wyatt officials followed in finding Plaintiff guilty of the infraction).

and envelopes required to send mail; (v) personal hygiene items; (vi) law library access and access to lawyers and the courts; (vii) socks, underwear and more than one jumpsuit; (viii) clean sheets more than once a week; (ix) commissary; (x) reading materials; (xi) food of the same quantity and quality provided to general population inmates; (xii) medical services; (xiii) cell sanitation; (xiv) educational and employment opportunities; and (xv) freedom of movement. Plaintiff further alleges that the segregation negatively affected him beyond the 72 days by, *inter alia,* interfering with: (1) his ability to obtain prison employment, due to his security designation and (2) his criminal proceedings, because he was not able to contact his lawyer. With respect to the latter complaint, Plaintiff submits as exhibits two motions his criminal attorney filed in his Criminal Case. In the first motion, Plaintiff's criminal attorney sought to withdraw as Plaintiff's attorney in the case four days prior to the sentencing hearing, stating that there was a "breakdown of the attorney/client relationship" and "ineffective communication has developed." Cmpt., ex. 1, p. 9 (Motion to Withdraw). However, according to the transcript from the sentencing in Plaintiff's criminal case, such motion was withdrawn. Criminal Case, Docket # 44 (Transcript of Revocation of Supervised Release), p. 2. In the second motion, Plaintiff's criminal attorney sought to file notice of appeal out of time, stating, in part, that the appeal was late because Plaintiff had limited telephone and mail privileges and was unable to communicate with counsel directly. Cmpt., ex. 1, p. 11 (Motion to File Notice of Appeal Out of Time). However, according to the docket in Plaintiff's criminal trial, such motion was granted. Criminal Case, Text Order on Oct. 16, 2009.

Plaintiff makes several claims based on the foregoing. First, he claims that Defendants violated his rights under the United States Constitution by (i) denying him access to the courts in violation of the First Amendment; (ii) subjecting him to cruel and unusual punishment in violation of the Eighth Amendment; and (iii) denying him due process by imposing sanctions on him without adequate procedural protections in violation of the Fourteenth Amendment. Additionally, Plaintiff claims that Defendants violated the Rhode Island Constitution; Rhode Island State law; and the policies of Wyatt and the ACI, respectively.

## DISCUSSION

### I. Screening Under § 1915(e)(2) and § 1915A

In connection with proceedings *in forma pauperis,* § 1915(e)(2) instructs the Court to dismiss a case at any time if the Court determines that the action, *inter alia,* fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2). Similarly, 28 U.S.C. § 1915A ("§

3

1915A") directs courts to screen complaints filed by prisoners against a governmental entity, officer or employee and dismiss such claims for identical reasons. 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B) and § 1915A is identical to the legal standard used when ruling on a 12(b)(6) motion. *See Pelumi v. Landry*, No. 08-107, 2008 WL 2660968, at *2 (D.R.I. June 30, 2008). In making this determination, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff, although the Court need not credit bald assertions or unverifiable conclusions. *Ashcroft v. Iqbal*, -- U.S. --, 129 S.Ct. 1937, 1949-1950 (2009). Further, the Court must review pleadings of a *pro se* plaintiff liberally. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285 (1976). A complaint fails to state a claim on which relief may be granted if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)); Fed.R.Civ.P. 8(a)(2).

## II. Legal Standard Under § 1983

In order to maintain a § 1983 action, the conduct complained of must have (1) been committed by a person acting under color of state law and (2) deprived the plaintiff of a constitutional or federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980). Here, even assuming Defendants were acting under state law, Plaintiff has failed to allege facts indicating that Defendants deprived him of a constitutional or federal statutory right.

## III. Analysis of Federal Causes of Action

### A. First Amendment Access to the Courts Claims

Plaintiff first alleges that Defendants violated his rights under the First Amendment to access the courts. Presumably, Plaintiff bases this claim on his allegations that he was denied access to the law library and his attorney while in segregation. Although prisoners have a constitutional right to meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491 (1977), to recover under this theory, a plaintiff must demonstrate that he suffered an actual injury, such as having a "nonfrivolous legal claim ... frustrated or ... impeded," as a result of the alleged misconduct. *Lewis v. Casey*, 518 U.S. 343, 351-53, 116 S.Ct. 2174 (1996).

Here, the only injury Plaintiff alleges is interference with his criminal case. However, the specific examples he provides do not suggest any actual harm. First, the motion to withdraw filed by Plaintiff's criminal trial attorney based, in part, on an inability to communicate with Plaintiff, was withdrawn. Criminal Case, Docket # 44 (Transcript of Revocation of Supervised

Release), p. 2. Second, even if the limitation on Plaintiff's telephone and mail privileges and inability to talk with his attorney directly impeded Plaintiff's ability to appeal his sentencing in a timely manner, the Court granted Plaintiff's motion to file an appeal out of time. Criminal Case, Text Order on Oct. 16, 2009. Accordingly, Plaintiff fails to allege the harm necessary to state a cognizable claim for violation of access to the courts, and, thus, the claims regarding the same should be dismissed. I so recommend.

### B. Eighth Amendment Conditions-of-Confinement Claims

Plaintiff alleges that the conditions in segregation violated the Eighth Amendment. The Eighth Amendment prohibits "cruel and unusual punishments," and "it is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994)(quoting *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Prison officials must provide humane conditions of confinement by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care." *Id.*, 511 U.S. at 832 (citation omitted). However, "the Constitution does not mandate comfortable prisons"; to the extent that certain conditions are only "restrictive" or "harsh," they are merely "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347-49, 101 S.Ct. 2392 (1981). To allege an Eighth Amendment claim, a plaintiff must plead facts which establish both an objective component, that he was forced to endure "extreme deprivations" beyond the bounds of human decency, and a subjective component, that the defendant acted with "deliberate indifference" to such conditions. *See Hudson v. McMillian*, 503 U.S. 1, 8-9, 112 S.Ct. 995 (1992).

Plaintiff's claims regarding the conditions in segregation are not sufficiently serious to satisfy the objective component of the Eighth Amendment test. *See, e.g., Figueroa v. Dinitto*, 52 Fed.Appx. 522, at *1 (1st Cir. 2002)(confinement to a cell for 23-24 hours a day, without any opportunity to work or participate in educational, vocational, or rehabilitation programs did not violate the Eighth Amendment); *Hightower v. Vose*, 95 F.3d 1146, at *2 (1st Cir. 1996)(denial of shower for prisoner for eight days is a de minimis imposition that did not implicate constitutional concerns); *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992)(forty-five minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody); *Little v. Norris*, 787 F.2d 1241, 1243-44 (8th Cir. 1986)(30-day withholding of mail from prisoner in segregation did not amount to a constitutional violation); *cf. Schmitt v. Mulvey*,

No. 04-10717, 2006 WL 516755, at *3 (D. Mass Mar. 1, 2006)(loss of television, radio, and telephone privileges for a couple of months does not amount to an atypical and significant hardship). Further, Plaintiff does not allege any harm resulting from the lack of exercise or unsanitary conditions about which he claims. *See French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)(lack of exercise may rise to a constitutional violation in certain limited circumstances "where movement is denied and muscles are allowed to atrophy [and] the health of the individual is threatened"); *Flaherty v. Cunningham*, No. 93-216, 1994 WL 485751, at *2 (D.N.H. Sept. 2, 1994)(inmates' Eighth Amendment claims failed where inmates did not aver sufficient facts demonstrating present or potential future harm). Additionally, although the denial of medical services amounting to "deliberate indifference" to serious medical needs can form the basis of a valid Eighth Amendment claim, *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994), Plaintiff does not describe any medical needs, and certainly does not allege that he suffered any serious medical needs or that the lack of medical services amounted to deliberate indifference to any such needs.

Accordingly, Plaintiff fails to allege facts to state an Eighth Amendment claim on which relief may be granted, and, thus, the claims regarding the same should be dismissed. I so recommend.

### C. Fourteenth Amendment Due Process Claims

Plaintiff's primary claim is that Defendants placed him in, or caused him to be placed in, disciplinary segregation without affording him procedural safeguards, including a disciplinary hearing, in violation of the Fourteenth Amendment. In order to state a procedural due process claim, a plaintiff must demonstrate a violation of a life, liberty or property interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). However, here, Plaintiff does not demonstrate such a violation.

While a state may create liberty interests that are protected by the Due Process Clause, these interests are generally limited to freedom from restraint that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Connor*, 515 U.S. 472, 484-86, 115 S.Ct. 2293 (1995)(punitive segregation for a term of 30 days does not trigger the protections of the Due Process Clause because it is not an atypical and significant hardship in relation to the ordinary instances of prison life). Here, Plaintiff's 71-day confinement in disciplinary segregation did not impose an atypical and significant hardship on Plaintiff in degree and/or duration sufficient to create a protected liberty interest in avoiding such

placement. *See id.; Williams v. Bitner*, 307 Fed.Appx. 609, 611 (3rd Cir. 2009)(sanction of 90 days in disciplinary segregation did not give rise to a due process liberty interest); *Blum v. Fed. Bureau of Prisons*, No. 98-1055, 1999 WL 638232, at *3 (10th Cir. Aug. 23, 1999)(same); *Williams v. Wall*, No. 06-012, 2006 WL 2854296, at *3 (D.R.I. Oct. 04, 2006)(21 days of segregation at ACI fails to implicate liberty interest). Thus, the allegations in the Complaint fail to state claims on which relief may be granted under the Due Process Clause. Accordingly, I recommend such claims be dismissed.

## IV. Supplemental State Law Claims

Having recommended that the federal claims be dismissed, I recommend that the Court need not reach and discuss Plaintiff's state law claims, and that such state law claims be dismissed. *See* 28 U.S.C. § 1367(c)(district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *see also Menebhi v. Mattos*, 183 F.Supp.2d 490, 505-506 (D.R.I. 2002)(quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966))("when all federal claims are eliminated from the case before trial, in the usual case the balance of factors to be considered should lead the court to conclude that the 'state claims should be dismissed as well'").

## CONCLUSION

In summary, as detailed above, I find that the Complaint fails to state any federal claims on which relief may be granted and that the Court need not reach Plaintiff's state law claims. I, thus, recommend that the action be DISMISSED and that Plaintiff's motion for leave to proceed *in forma pauperis* be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed.R.Civ.P. 72(b). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Jacob Hagopian
_____
Jacob Hagopian
Senior United States Magistrate Judge
September 14, 2010